[PUBLISH]                                    `

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-10260
_____

D.C. Docket No. 1:12-cv-02202-RDP,
BKCY No. 1:11-bk-42825-JJR

In re:  LERIN BROWN,

Debtor.

_____

LERIN BROWN,

Plaintiff-Appellant,

versus

LINDA B. GORE,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(February 14, 2014)

Before CARNES, Chief Judge, HULL and COX, Circuit Judges.

HULL, Circuit Judge:

Debtor Lerin Brown appeals the district court's decision, which affirmed the bankruptcy court's order denying confirmation of Brown's proposed Chapter 13 plan. The debtor filed a Chapter 13 petition, instead of a Chapter 7 petition, only so that his attorney could be paid in installments through the proposed Chapter 13 plan. The bankruptcy court found that Brown had not filed his petition or his proposed plan in "good faith," as required by 11 U.S.C. § 1325(a)(3) and (a)(7) respectively. After careful review of the record and the briefs, and with the benefit of oral argument, we conclude that Brown has not shown that the bankruptcy court's fact findings were clearly erroneous.

We set forth the facts that led the bankruptcy court to deny confirmation of Brown's Chapter 13 plan.

## I. FACTS AND PROCEDURAL HISTORY

**A.      Brown's Chapter 13 Bankruptcy Petition**

In 2011, petitioner Brown filed a voluntary petition for bankruptcy under Chapter 13 of the bankruptcy code. See 11 U.S.C. § 1301 et seq. Brown reported $1,134 in Social Security disability insurance benefits each month. His only other income was $230 in rental income each month. His rental income plus Social Security benefits combined for a monthly total of $1,364. His average monthly expenses were $1,214, leaving him with a monthly net discretionary income of $150.

As for assets, Brown estimated that he had $920 in personal property, including: (1) $20 in cash; (2) $800 in household goods; and (3) $100 in clothes. Brown did not list any real property assets or even a vehicle.

Brown filed a schedule showing he owed a total of $16,203 to ten different creditors (the "scheduled creditors"), all of whom held unsecured, nonpriority claims. The scheduled creditors and the amounts Brown reported to owe them were: (1) $1,100 to "Allied Interstate Inc."; (2) $852 to "Ar Resources Inc."; (3) $562 to "Capio Partners LLC"; (4) $1,015 to "Comcast Cable"; (5) $93 to "Covington Credit"; (6) $700 to "Credit Central"; (7) $600 to "Gadsden Financial"; (8) $994 to "Nco-Medclr"; (9) $287 to "Paragon Rev"; and (10) $10,000 to "Rainbow Health Care."[1]

## B.    Brown's Chapter 13 Reorganization Plan

Brown proposed a Chapter 13 reorganization plan to span three years. The plan called for Brown to make monthly payments of $150 for 36 months, for a total of $5,400. At oral argument, the parties confirmed that from this $5,400 amount, Brown would pay: (1) $2,000 to his attorney in attorney's fees; (2) $281 to the bankruptcy court as a filing fee; (3) $50 to his attorney to cover Brown's required credit counseling; (3) $20 to his attorney to purchase a credit report; and (4) 4.5 percent of each $150 payment as the Chapter 13 trustee's commission.

---

[1]Additionally, Brown reported that he had sent unspecified claim notices to three other creditors: (1) Jon Barry & Associates; (2) Riverview RMC; and (3) Rural Metro Ambulance.

3

Brown's 36-month plan proposed to pay all attorney's fees and administrative expenses before any distributions to creditors. It would take 17 months of $150 payments by Brown to pay the attorney's fees and administrative costs.[2] The creditors would have to wait almost 17 months before getting their first dollars. Even assuming Brown completed his plan, the scheduled creditors collectively would receive $2,806, which was only 17 percent of the $16,203 Brown owed.

Brown proposed his plan on November 4, 2011, before the deadline for the scheduled creditors to file proofs of claim. However, as the bankruptcy court later noted in denying confirmation, only three creditors ended up filing claims within the deadline, in amounts of $501.50, $489.46, and $364.12, for a total of $1,355.08. Therefore, Brown would pay $2,000 to his attorney and $1,355.08 to creditors under the plan. The bankruptcy court speculated that few "creditors bothered to file claims perhaps because the likelihood of any meaningful payments was not feasible" under Brown's meagre budget, and any "distribution from the trustee will be of little consequence."

## C.    Trustee Gore's Objection to Confirmation

---

[2] Based on the face of Brown's plan, and the parties' explanation of it at oral argument, all of Brown's first $150 payment and most of his second $150 payment would go to paying the $281 court filing fee. Then payments towards the $2,000 attorney's fee would start.

4

Trustee-appellee Linda Gore, the Chapter 13 trustee, requested that the bankruptcy court not confirm Brown's Chapter 13 plan. In her written objections, trustee Gore provided two reasons for her recommendation: (1) "the plan is not proposed in good faith in that debtor may need to be in a Chapter 7 case"; and (2) "it does not appear the debtor will be able to comply with the plan."

To understand trustee Gore's objections to Brown's Chapter 13 plan, it helps to explain how a straight Chapter 7 liquidation would have worked for Brown. The court filing fee for Chapter 7 is $306, which can be paid in four installments. The bankruptcy court noted that Brown appeared to qualify for an in forma pauperis waiver of the Chapter 7 filing fee but no such waiver is available in Chapter 13 cases. In a Chapter 7 case, Brown would not have to pay a trustee's commission.

Under Chapter 7, a debtor liquidates any non-exempt assets and receives a full discharge of his outstanding debts within just a few months. Brown had no non-exempt assets to liquidate, so he could have filed a Chapter 7 petition and received a full discharge a few months later. A successful Chapter 7 petition discharges all debts. 11 U.S.C. § 727(a)–(b).

A Chapter 7 case was thus clearly more beneficial to Brown except for the fact that his attorney's fees could not be financed through a Chapter 7. See Lamie v. U.S. Tr., 540 U.S. 526, 538–39, 124 S. Ct. 1023, 1032 (2004) (holding that the

5

Bankruptcy Code "does not authorize compensation awards to debtors' attorneys from estate funds" in a Chapter 7 case, unless the attorney is "employed by the trustee and approved by the court"). Rather, Brown would have to pay up front attorney's fees of $750 to $1,000 for an attorney to file a Chapter 7.[3]

## D.    Bankruptcy Court's Confirmation Hearing

On February 9, 2012, the bankruptcy court held a confirmation hearing on Brown's Chapter 13 plan. Brown appeared, represented by counsel. The bankruptcy court noted that it had continued an earlier confirmation hearing to allow Brown time to convert his Chapter 13 petition into a Chapter 7 liquidation petition because "Mr. Brown unquestionably would be better off in Chapter 7."

Brown, however, had not done so. Thus the bankruptcy court considered whether Brown's proposed plan met the requirements for confirmation under Chapter 13, concluding that Brown's plan did not.

The bankruptcy court suggested that the only reason Brown had filed under Chapter 13 instead of Chapter 7 was because Brown did not have the money up front to pay his attorney's fee. The bankruptcy court stated: "All he has got to do is not make any payments, is to hold those [$150] payments that he would make to the trustee for a few months and then he can pay his lawyer and then he can file Chapter 7 and he will then permanently have those debts erased . . . . But, here, all

---

[3]The bankruptcy court stated "[a]ttorneys in this Division often charge $1,000 or less to file a simple Chapter 7 case."

6

we are really doing is we are financing the lawyer's fee . . . , and that is not a purpose of Chapter 13."

The bankruptcy court then pressed Brown's attorney: "Other than you can't come up with attorney's fees, you tell me why he wants to file Chapter 13." Brown's attorney responded: "Well, the reason he wants to is because he wants some relief and he can't get it with a Chapter 7 because he has no money."  The bankruptcy court countered: "And he has no money to, you have to finish the sentence, pay his lawyer."  Brown's attorney implied that this was correct, stating: "Well, or pay the [court] filing fee."  The bankruptcy court pointed out that a debtor "can pay the filing fee in installments in Chapter 7 to the same extent that he can in Chapter 13."  Brown was present during this exchange and apparently acquiesced to his attorney's statements.

In light of the fact that the only reason Brown filed a Chapter 13 petition, instead of a Chapter 7 petition, was so Brown could pay the $2,000 attorney's fee through installments under a Chapter 13 plan, the bankruptcy court found that the petition and plan were not filed or proposed in good faith.  Explaining this conclusion, the bankruptcy court stated: "I am not going to allow these folks to come in here to pay lawyers . . . .  I think there is a real ethical issue of doing this . . . . [I]f they can't come up with the attorney fee, I don't see how in the world you expect that they are going to be able to pay a five or three-year plan and not default

7

and then, once they do, they are back in the soup again and they have made no

headway."[4]  The bankruptcy court was particularly concerned that Brown would be

obligated to pay $150 for three years, would pay his attorney $150 each month for

16 months, and then would default on his plan and be right back in the same

predicament without having received a discharge.

Thus, the bankruptcy court orally denied confirmation of the proposed

Chapter 13 plan.  Advising Brown to "save some money . . . to pay the lawyer to

put [him] in Chapter 7," the bankruptcy court explained the benefits of a Chapter 7

liquidation.  It told Brown: "When you file Chapter 7, then you are discharged and

that's it.  You don't have to pay any more.  You don't have to pay a three-year

plan, two-year plan, six-month plan, one-week plan.  You pay the lawyer and the

filing fee."  The bankruptcy court further explained that Brown would only have to

pay an attorney approximately $750, in a lump sum payment, for a Chapter 7

petition, instead of the $2,000 the proposed Chapter 13 plan called for him to pay

his attorney. In fact, the bankruptcy court suggested to Brown that if he could

make $150 in Chapter 13 payments, he could wait a few months and "save some

money . . . until you come up with enough to pay the lawyer to put you in Chapter

7."

### E.    The Bankruptcy Court's Order Denying Confirmation

---

[4]Although it was Brown's first bankruptcy case, the bankruptcy court noted that other
Chapter 13 debtors in the district had "filed twelve, thirteen, fourteen," or "eighteen" cases.

8

After the hearing, the bankruptcy court explained in a thorough order its reasons for denying confirmation of the Chapter 13 plan.  See In re Jackson, Nos. 11-42528-JJR-13, 11-42825-JJR-13, 2012 WL 909782 (Bankr. N.D. Ala. Mar. 16, 2012), aff'd sub nom, Brown v. Gore (In re Brown), No. 1:12-CV-02202-RDP, 2012 WL 6609005 (N.D. Ala. Dec. 13, 2012).[5]

The bankruptcy court assessed Brown's proposed plan against the factors this Court set forth in In re Kitchens for determining good faith (the "Kitchens factors").  Id. at *7–8 (quoting In re Kitchens, 702 F.2d at 888–89).  One Kitchens factor is "the motivations of the debtor and his sincerity in seeking relief under the provisions of Chapter 13."  Id. at *7 (internal quotation marks omitted). Evaluating that factor, the bankruptcy court found that Brown's motivations and sincerity "were tainted because [he] sought relief under chapter 13, not to adjust debts and preserve assets, but to accommodate payment of attorney fees."  Id. at *8.  The bankruptcy court explained the reasons for that finding "at length."  Id.

The bankruptcy court found that Brown was a "quintessential candidate[] for chapter 7 relief," and then asked why did Brown "seek relief under chapter 13 that postpones discharge pending completion of at least a 3-year plan, when [he] easily

_____

[5]In this same order, the bankruptcy court explained why it was denying the Chapter 13 plan of another debtor, Steven Jackson.  Jackson, 2012 WL 909782, at *1.  Like Brown, Jackson's plan primarily involved only paying an attorney's fee in installments.  Id.  The same law firm represented both debtors.  Id. at *2 n.8.  The initial attorney fee in Jackson's case was $2,500, which the attorney later reduced to $1,500.  Id. at *1 n.4.  Jackson is not a party to this appeal.

9

qualified for chapter 7 relief that will provide [him] with [a] prompt discharge[]

and no long-term commitments?" Id. at *1.

The answer, the bankruptcy court found, was because of Brown's "inability

or unwillingness" to prepay his attorney's fees in one lump sum before his petition

for relief was filed. Id.  The bankruptcy court recounted that, at the confirmation

hearing, "Brown's counsel candidly admitted the only reason Brown filed for relief

under chapter 13 was to finance his attorney fees because he could not come up

with the funds needed to prepay fees for a chapter 7 case." Id. at *2.

The bankruptcy court then reviewed the purpose of Chapter 13 as compared

with Chapter 7.  Quoting this Court's Kitchens precedent, the bankruptcy court

noted that Chapter 13 was "'designed to facilitate adjustments of debts of

individuals with regular income through extension and composition plans funded

out of future income, under the protection of the court.'" Id. at *3 (quoting In re

Kitchens, 702 F.2d at 887 (additional internal quotation marks omitted)).

Therefore, "the precept for chapter 13 relief is adjustment of an individual's debts

by way of developing a plan for their repayment." Id.  A Chapter 13 debtor is able

to "preserv[e] assets that otherwise might be liquidated under chapter 7." Id.

However, Chapter 13 "was not intended as a payment collection and enhancement

device for attorneys." Id. at *4.

10

The bankruptcy court stressed that, in Brown's case, there was no meaningful adjustment of his debts and none of his assets were being protected—they were all exempt. Id. at *3.  Brown was not saving his home by paying mortgage arrears or protecting non-exempt equity or assets; neither was he avoiding repossession of vehicles, nor holding at bay tax or domestic support creditors.  Id. at *6.

Indeed, Brown's plan was an "attorney-fee-centric" plan because it "provided some small distribution to unsecured creditors," but Brown's "main purpose for choosing chapter 13 as opposed to chapter 7 was to finance attorney fees."  Id. at *5 (internal quotation marks omitted).  The bankruptcy court pointed out that "[w]hat is telling are provisions in such [attorney-fee-centric] plans that delay the commencement of payments to unsecured creditors until after attorney fees are fully paid.  Such a provision has always been present in the Brown case."  Id. at *5 n.13.

The bankruptcy court acknowledged that "[i]n most chapter 13 cases, paying attorney fees through a plan is not only permitted, it is the norm."  Id. at *7.  Nevertheless, Brown's attorney-fee-centric plan "abuse[d] the provisions, purpose and spirit of chapter 13" because payment of attorney's fees was "the overriding purpose for filing a chapter 13 case."  Id.  This was particularly true in Brown's

11

case, where "relief under chapter 7 would be the logical choice if it were not for the attorney-fee hurdle." Id.

The bankruptcy court also discussed another factor mentioned in Kitchens: "the substantiality of repayment to the unsecured creditors." Id. at *8. Regarding this factor, the bankruptcy court noted that, at first glance, it may appear Brown should be permitted to proceed under Chapter 13 because his plan at least proposed "to pay small, albeit tenuous distributions to unsecured creditors—something being better than nothing." Id. The bankruptcy court, however, explained that even if Brown made some payments to his creditors, those payments would "be of little consequence." Id. The creditors' expenses would, "in most instances, exceed the recovery." Id. Furthermore, the bankruptcy court stressed the "abysmal failure rate of chapter 13 cases" generally, and noted that Brown had "little incentive to stay the course for three years." Id.

The "burden which the plan's administration would place on the trustee" is another Kitchens factor the bankruptcy court emphasized. Id. at *7 (internal quotation marks omitted). The bankruptcy court pointed out that the primary job of the trustee in Brown's case would be to collect and distribute plan payments in order to pay his attorney's fees. Id. at *8. And the bankruptcy court noted that Brown proposed paying the trustee only a "fraction of her expenses and overhead

12

related to servicing" his plan.  Id.  Brown's plan would thus force the trustee to subsidize the work she did on his case.  See id.

Thus, the bankruptcy court found that Brown did not file his petition or propose his plan in good faith, as there was "no meaningful or legitimate debt adjustment purpose" to be found in Brown's case or plan.  Id. at *10.  The bankruptcy court considered "most glaring" the fact that even if Brown's proposed Chapter 13 plan was ultimately paid, everything that might be accomplished over the next three years could be achieved more quickly and cheaply, and with greater certainty—especially a discharge—under Chapter 7.  Id.

The bankruptcy court gave Brown "14 days to convert his case to a case under chapter 7."  Id.  Brown did not do so and instead appealed to the district court, which affirmed.  Brown timely appealed to this Court.

## II. DISCUSSION

### A.    Standard of Review

In a bankruptcy case, this Court "sits as a second court of review and thus examines independently the factual and legal determinations of the bankruptcy court and employs the same standards of review as the district court."  Torrens v. Hood (In re Hood), 727 F.3d 1360, 1363 (11th Cir. 2013).  Furthermore, when a district court affirms a bankruptcy court's order, as the district court did here, this Court reviews the bankruptcy court's decision.  Educ. Credit Mgm't Corp. v.

13

Mosley (In re Mosley), 494 F.3d 1320, 1324 (11th Cir. 2007). "We review the
bankruptcy court's factual findings for clear error and its legal conclusions de
novo." Id.

A bankruptcy court's determination whether a chapter 13 plan has been
proposed in good faith is a finding of fact reviewable under the clearly erroneous
standard." Jim Walter Homes, Inc. v. Saylors (In re Saylors), 869 F.2d 1434, 1438
(11th Cir. 1989). The bankruptcy court judge is in the best position to evaluate
good faith and weigh the relevant Kitchens factors, as it sits as a finder of fact and
can best assess motives and credibility. See id. The bankruptcy court must utilize
its fact finding expertise and judge each case on its own facts after considering all
of the circumstances. See In re Kitchens, 702 F.2d at 888–89.

**B.    Chapter 13 Reorganization Generally**

As the bankruptcy court aptly noted, Chapter 13 of the Bankruptcy Code "is
designed to facilitate adjustments of the debts of individuals with regular income
through extension and composition plans funded out of future income, under the
protection of the court." Id. at 887 (internal quotation marks omitted). Under
Chapter 13, "any individual with regular income" may file for Chapter 13
reorganization and make "payments to a trustee under bankruptcy court protection,
with the trustee fairly distributing the funds deposited to creditors until all debts

14

have been paid." <u>United States v. Devall</u>, 704 F.2d 1513, 1515–16 (11th Cir. 1983) (quotation marks omitted).

Chapter 13, therefore, differs from a liquidation proceeding under Chapter 7. <u>See</u> 11 U.S.C. § 701 <u>et seq.</u>  In a Chapter 7 case, a trustee gathers up a debtor's non-exempt property, sells that property, and uses the cash proceeds to repay the debtor's creditors.  <u>See id.</u> § 704(a)(1).  Afterwards, the Chapter 7 debtor is entitled to a discharge of all outstanding debts.  <u>See id.</u> § 727(a).  Chapter 7 requires a debtor to give up his non-exempt assets but allows him immediate debt relief.  <u>See</u> <u>id.</u>  Here, it is undisputed that Brown had no non-exempt assets.  Therefore, Brown was not attempting to preserve any assets by pursuing a Chapter 13 petition.  In short, Chapter 7 would have given Brown immediate relief.

On the other hand, Chapter 13 enables a debtor to retain his non-exempt assets and use his regular income (instead of those assets) to repay his debts. Chapter 13 requires a debtor to file a debt repayment plan.  <u>Id.</u> § 1321.  That plan must, <u>inter alia</u>, "provide for the submission of all or such portion of future earnings or other future income of the debtor to the supervision and control of the trustee as is necessary for the execution of the plan."  <u>Id.</u> § 1322(a)(1).  A Chapter 13 debtor does not receive a discharge until the end of his plan.  As discussed, Brown's plan here required him to make monthly payments of $150 for three years to receive his discharge.

After a debtor files a Chapter 13 plan, the bankruptcy court must "hold a hearing on confirmation of the plan" during or before which "[a] party in interest may object to confirmation." Id. § 1324(a).  The bankruptcy court may confirm the plan if, inter alia: (1) "the plan has been proposed in good faith and not by any means forbidden by law"; and (2) "the action of the debtor in filing the petition was in good faith." Id. § 1325(a)(3), (a)(7).  At any point before discharge, a debtor: (1) may convert a case under Chapter 13 to a case under Chapter 7; or (2) may request that the bankruptcy court dismiss a Chapter 13 case. Id. § 1307(a)– (b).

## C.    "Good Faith" Under Chapter 13

As quoted above, Chapter 13 contains two "good faith" requirements.  First, subsection (a)(3) of § 1325 requires the bankruptcy court to determine if the plan was proposed in good faith.  11 U.S.C. § 1325(a)(3).  Subsection (a)(7), similarly, mandates consideration of whether the petition was filed in good faith. Id. § 1325(a)(7).[6]  Congress did not define or articulate standards for "good faith" in subsections (a)(3) or (a)(7).

---

[6]The former provision was an original component of Chapter 13, enacted as part of the Bankruptcy Reform Act.  See Pub. L. No. 95-598, § 1325, 92 Stat. 2549 (1978).  Congress added the second good faith requirement when it enacted the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.  See Pub. L. No. 109-8, § 102, 119 Stat. 23.

16

As to subsection (a)(3), this Court has set forth a non-exhaustive list of factors relevant to whether a plan was proposed in good faith.  In re Kitchens, 702 F.2d at 888–89.  These factors are: (1) "the amount of the debtor's income from all sources"; (2) "the living expenses of the debtor and his dependents"; (3) "the amount of attorney's fees"; (4) "the probable or expected duration of the debtor's Chapter 13 plan"; (5) "the motivations of the debtor and his sincerity in seeking relief under the provisions of Chapter 13"; (6) "the debtor's degree of effort"; (7) "the debtor's ability to earn and the likelihood of fluctuation in his earnings"; (8) "special circumstances such as inordinate medical expense"; (9) "the frequency with which the debtor has sought relief under the Bankruptcy Reform Act and its predecessors"; (10) "the circumstances under which the debtor has contracted his debts and his demonstrated bona fides, or lack of same, in dealings with his creditors"; (11) "the burden which the plan's administration would place on the trustee"; (12) "the extent to which claims are modified and the extent of preferential treatment among classes of creditors"; (13) "substantiality of the repayment to the unsecured creditors"; and (14) "other factors or exceptional circumstances."  Id.

These same Kitchens factors for subsection (a)(3) are equally relevant to determining whether a petition was filed in good faith under subsection (a)(7). Importantly too, "the facts of each bankruptcy case must be individually examined

17

in light of [these] various criteria to determine whether the chapter 13 plan at issue was proposed in good faith." Id. at 888.  While Kitchens does not use this phrase, it basically adopts a "totality of the circumstances" approach for determining good faith or lack thereof, which is what other circuits do, too.  See id. at 888–89; see also Sikes v. Crager (In re Crager), 691 F.3d 671, 675 (5th Cir. 2012) ("In this circuit, courts apply a 'totality of the circumstances' test to determine whether a Chapter 13 petition and plan are filed in good faith . . . ."); Berliner v. Pappalardo (In re Puffer), 674 F.3d 78, 83 (1st Cir. 2012) (reversing because the bankruptcy court did not consider the totality of the circumstances when evaluating whether the debtor proposed his Chapter 13 plan in good faith but, rather, applied a per se rule that attorney-fee-centric Chapter 13 petitions and plans are filed and proposed in bad faith).  Further, "prudence dictates that we hew to the overarching principle that the presence or absence of good faith should be ascertained case by case." Id.

With this background, we turn to Brown's Chapter 13 petition and plan.

**D.    Application of Good Faith Standards Here**

Here, the bankruptcy court found that Brown did not file his petition or propose his plan in good faith.  See 11 U.S.C. § 1325(a)(3), (a)(7).  After close review of the record and the totality of the circumstances, we cannot say that the bankruptcy court's findings were clearly erroneous.

First, the bankruptcy court did not clearly err in its determinations as to the debtor's motivations and sincerity in seeking Chapter 13 relief, which is a <u>Kitchens</u> factor.  The record supported the bankruptcy court's findings that Brown sought Chapter 13 relief not to adjust debts and preserve assets but to pay his attorney's fees, and that Brown was far better off in a Chapter 7, over a Chapter 13, bankruptcy.  Brown had no non-exempt assets for the trustee to liquidate, and Brown to lose, in a straight Chapter 7 liquidation.  Brown did not have a home or a vehicle he was trying to protect or preserve in a Chapter 13 case.  Brown's monthly income was low and barely exceeded his monthly expenses.  In addition to being a "no asset" case, Brown's income was fixed, not fluctuating, and Brown did not have an ability to earn more money over the next three to five years. Brown's Social Security income would not have been subject to garnishment in a Chapter 7 liquidation.  These undisputed financial facts heavily favored a Chapter 7, over a Chapter 13, bankruptcy.

The record also supported the bankruptcy court's finding that the only reason Brown filed a Chapter 13 petition and plan was so that Brown's attorney's fees could be paid in installments through a Chapter 13 plan.  Brown's Chapter 13 plan was all about attorney's fees, and not Brown's best interest or the creditors. While the choice of chapter is one made by the debtor, we cannot say the

19

bankruptcy court clearly erred in finding this Chapter 13 plan was for the benefit of the lawyer and not in the best interest of the debtor Brown.

Indeed, there was no evidence in this particular record revealing unique circumstances that would lead to the conclusion that it was in Brown's best interest to file under Chapter 13. See In re Crager, 691 F.3d at 675–77 (affirming bankruptcy court's confirmation of attorney-fee-centric plan when debtor "had a legitimate fear that a future medical problem might leave her in a situation in which she had to take on more debt and might need to file another Chapter 13 petition").

As to the administrative burden Brown's plan would place on the trustee, another Kitchens factor, the trustee would have worked primarily for the attorney to collect $150 for 17 months. Because the attorney was paid in full before the creditors received a dime, the bankruptcy court suggested that "the primary job of the trustee . . . [would] be to collect and distribute plan payments to pay attorney fees." Only three of the ten scheduled creditors bothered to file claims, totaling $1,355.08, but no part of that sum would be paid for 17 months until the attorney received his full $2,000.

As to the Kitchens factor regarding substantiality of repayment to those creditors, there was a reasonable likelihood that Brown would not complete his Chapter 13 plan and would never pay those creditors anything. Brown's monthly

20

income was $1,364 and his monthly expenses were $1,214, leaving $150 in discretionary income. The plan proposed Brown would pay that entire $150 every month to the trustee for three years. This left no margin of error or room for unforeseen expenses. If Brown could not save $150 for five months to pay his attorney up front for a Chapter 7 petition, a Chapter 13 plan requiring him to pay $150 monthly for three years seemed doomed to failure. The bankruptcy court emphasized the "abysmal failure rate of chapter 13 cases," pointing out that in the Eastern Division of the Northern District of Alabama "approximately 65% of all chapter 13 cases fail before debtors complete their plans and become eligible for a discharge." During oral argument, the parties agreed that, in their experiences, approximately two-thirds of Chapter 13 plans fail.

Furthermore, if the bankruptcy court confirmed Brown's Chapter 13 plan, Brown could have simply made the payments to his attorney and then converted his case to a Chapter 7 and received a discharge. As the bankruptcy court succinctly stated, "there is no good faith to be found in a temporary chapter 13 case filed to accommodate payment of attorney fees as a prelude to a conversion to chapter 7." Allowing Brown to do so would circumvent the Supreme Court's holding in Lamie that attorney's fees cannot be paid out of the funds of a Chapter 7 estate, absent the approval of the trustee and the court. See 540 U.S. at 538–39, 124 S. Ct. at 1032.

Notably too, the bankruptcy court did not apply a categorical rule prohibiting attorney-fee-centric or attorney-fee-only Chapter 13 plans.[7]  During oral argument, the Chapter 13 trustee agreed that debtors, such as Brown, need an attorney to successfully navigate both Chapter 7 and Chapter 13 proceedings.  And no one disputed that reasonable compensation to a debtor's attorney may be paid in installments from the debtor's estate in Chapter 13 cases.  Here, the bankruptcy court found Brown's Chapter 13 plan was not proposed in good faith because: the totality of the factual circumstances showed Brown was best served by a Chapter 7 bankruptcy; only Brown's attorney benefitted from proceeding under Chapter 13; and Brown was likely to default in his Chapter 13 case and end up without a discharge.  Our precedent demands a multi-factor analysis of the particular facts of a case to determine whether good faith existed, see In re Kitchens, 702 F.2d at 888–89, which is what the bankruptcy court did here.

For all of these reasons above, we cannot say that the bankruptcy court's findings that Brown's petition and plan did not meet the Chapter 13 good faith

---

[7]A few months after denying Brown's Chapter 13 plan, this same bankruptcy judge confirmed an attorney-fee-centric Chapter 13 plan, which involved a 60-month repayment period, a total payment of $5,400, and an attorney's fee of $1,800.  See In re Armstrong, No. 12-40530-JJR13 (Bankr. N.D. Ala. Jun. 7, 2012).  Although the debtor in that case subsequently failed to make the scheduled payments, the bankruptcy court's confirmation of that Chapter 13 plan further indicates that the court does not apply a categorical rule.

requirements were clearly erroneous.[8]  We offer no opinion as to other attorney-fee-centric Chapter 13 plans.  There is no hard and fast rule to be applied.  Each case has its own special circumstances, and Chapter 13 requires a case-by-case analysis by the fact-finder.

### III. CONCLUSION

In light of the foregoing, we affirm the bankruptcy court's denial of confirmation of Brown's Chapter 13 bankruptcy plan.

**AFFIRMED.**

---

[8]Perhaps the bankruptcy court could have restructured Brown's plan in this manner and then confirmed it.  However, the bankruptcy court did afford the parties continuances after noting its concern with the plan's satisfaction of the good faith requirements.  Moreover, the parties did not ask the bankruptcy court to restructure the plan.  Thus, we cannot say that the bankruptcy court erred in failing to do so sua sponte.

23